IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BOARD OF TRUSTEES, ROOFERS UNION LOCAL 30 COMBINED HEALTH AND WELFARE FUND, et al.,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HUGHES URETHANE CONSTRUCTION CO., INC.,**<br><br>*Defendant.* | Case No. 2:19-cv-01820-JDW |

### MEMORANDUM

The question in this ERISA collection action is whether a collective bargaining agreement required Hughes Urethane Construction Co., Inc. to make contributions to union funds for work that its owner performed. It's a question of contract interpretation, and doctrines of contract interpretation lead to the conclusion that Hughes Urethane had to make those contributions. The Court will grant the partial summary judgment motion that the union funds have filed.

**I.   BACKGROUND**

   **A.   The CBA**

Hughes Urethane is a spray foam urethane roofing and insulation company. It has been a signatory to a CBA with the Roofers Local 30 Union since 2004. A new CBA took effect in May 2014, and Hughes Urethane joined it by signing an Assent. Article I of the CBA defines "Employee" as "all persons employed within the collective bargaining unit represented by the Union." (ECF No. 28-6 at 2 (Art. I).) Article II,

however, defines "employee" as "all persons, whether commercial journeymen, commercial apprentices or foreman and all members in the bargaining unit (any or all of whom are sometimes hereafter referred to as 'employees'), who are at any time engaged . . . in performing for any Employer work covered by this Agreement." (*Id.* at 5 (Art. II § 5).) It explains that the parties intended the CBA to "establish the only wages, hours and terms and conditions of employment that any signatory Employer may pay to its workmen performing commercial roofing work within the trade and geographic jurisdiction of this Agreement." (*Id.*) And it requires that "Roofers shall operate any and all machinery owned or leased by an Employer which is used at the job site in connection with loading, unloading, application, and cleanup and removal of all roofing and/or waterproofing systems." (*Id.* at 6 (Art. V §3(k)).)

The CBA requires employers to contribute a portion of employee wages to the Union's Health and Welfare Fund, Pension Fund, Annuity Fund, Roofing Apprenticeship Fund, and Political Action and Education Fund ("the Funds"). (*See id.* at 21-24 (Art. XXV-XXXII).) The CBA gives the Funds the authority to conduct an audit of a company's business records to determine whether they have complied with their contribution obligations. An employer must self-report the hours that its employees work and pay corresponding contributions every month. (*See id.* at 24-25 (Art. XXXIII, §§ 1, 2).)

**B.     Hughes Urethane's Roofing Business**

A roofing job can involve recoating, wood work, metal work, or insulation work. To perform a recoating job, Hughes Urethane needs three employees: one who sprays the actual foam or coating, one who guides the hose, and one to operate the spray

foam urethane truck on the ground. Hughes Urethane employs Union roofers, office workers, and a salesperson. William Hughes and Daniel Albright Sr. are Hughes Urethane's owners and are employees of the company. Mr. Albright is a member of the Union, but Mr. Hughes is not.

Mr. Hughes testified that he and his foreman "are the only one that really knows how to operate the trucks fully[.]" (ECF No. 28-5 at 16:20-24.) On a recoating job, Mr. Hughes "mostly" operates the urethane truck. (*Id.* at 24:13-14.) He "occasionally" handles the actual spraying himself. (*Id.* at 23:6-11.) Even though Mr. Hughes performs this work, Hughes Urethane does not make contributions to the Funds for Mr. Hughes's wages.

### C. Procedural History

On April 26, 2019, the Funds filed this action, asserting claims against Hughes Urethane under the Employment Retirement Income Security Act, 29 U.S.C. § 1145 ("ERISA") and for breach of contract for contributions that it claims Hughes Urethane owes under the 2014 CBA. After seeking the Court's assistance, the Funds conducted an audit of Hughes Urethane's records for the period January 1, 2014 through December 31, 2015. The Funds now seek partial summary judgment for contributions that they contend Hughes Urethane should have made for Mr. Hughes's work. Hughes Urethane opposes the motion and has filed a motion to strike certain documents that it contends the Funds failed to produce in a timely fashion.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

### B.  Motion To Strike

Federal Rule of Civil Procedure 37(c)(2) provides for the exclusion of documents and evidence if a party fails to make a required production under Rule 26(a) or 26(e). However, the Rule gives courts discretion to determine that there was a substantial justification for the failure to disclose or if the failure to disclose was harmless. The Rule also gives courts discretion to fashion a lesser sanction, if appropriate.

### III. ANALYSIS

#### A. Summary Judgment

Section 515 of ERISA requires employers who are contractually obligated to contribute to a multiemployer plan under the terms of a collective bargaining agreement to "make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. The question of whether Hughes Urethane had to make contributions for Mr. Hughes's work is therefore one of contract interpretation.

Federal law governs the construction of collective bargaining agreements, and traditional contract principles apply when they are not inconsistent with federal labor law. *See Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). The principal goal of contract interpretation is to determine the intent of the parties. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011). "[W]hether a contract term is clear or ambiguous is a question of law for the court …." *Einhorn v. Fleming Foods of Pa., Inc.*, 258 F.3d 192, 194 (3d Cir. 2001). In determining whether a term is ambiguous, a court "must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Id.* at 194-95. Extrinsic evidence may include "the structure of the contract, the bargaining history, and conduct of the parties that reflects their understanding of the contract's meaning." *Id.* at 195.

The Court concludes that the CBA is not ambiguous. The CBA does contain two different definitions of "employee," a narrower one in Article I and a broader one in Article II. But extrinsic evidence demonstrates that the parties to the CBA intended the

word "employee" to encompass every employee of a company that has signed the CBA, regardless of whether he is a union member.

*First*, the language of the CBA supports the conclusion that the CBA is not ambiguous. Article II makes clear that the parties to the CBA intended the CBA to capture all work done by employees and ensure a single, consistent pay scale for covered work. Indeed, the parties made explicit their goal to stamp out historical practices in which some employers found loopholes to pay some employees more than others. In addition, the structure of the provisions concerning payments to the Funds appear to contemplate payments for all employees, not just for employees who happen to be union members.

The narrower definition in Article I of the CBA only says that employees "include" certain Union members. It does not say that the term is limited to those Union members. In some circumstances, the doctrine of *expressio unius* might imply that the parties intended this language to exclude non-union members from the definition of "employee," as Hughes Urethane argues. But here, when the CBA also contains other evidence that contradicts that doctrine, the Court will harmonize the definitions in Article I and Article II.

*Second*, the overall structure of the CBA supports the conclusion that the CBA is not ambiguous. At its core, the CBA offers a tradeoff. Employers agree to employ only union labor and to pay the higher wages that come with it. In exchange, the employers get access to union labor that would not be available to them otherwise. If an employer

6

could pick and choose when to use union labor and when to use non-union labor, it would unwind the core economic exchange that the CBA reflects.

*Third*, federal law supports the interpretation that the CBA is not ambiguous. If the Court were to read the definition in Article I literally, as Hughes Urethane urges, that definition would draw a distinction between employees who are and are not union employees. But ERISA does not permit distinctions between union and non-union employees. *See Burnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 623 (3d Cir. 1984). An interpretation that gives lawful meaning to a term is preferred to an interpretation that gives unlawful meaning. *See Arnold M. Diamond. Inc., v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999). Given the possibility of a lawful reading of the CBA, the Court must conclude that the parties intended to adopt such a reading, rather than including an unlawful definition of "employee."

Hughes Urethane does not dispute that Mr. Hugest was its employee, nor could it. Although he was an owner, the company paid him as an employee. He drew a salary, had taxes withheld, and received a W-2 withholding statement. The CBA obligated Hughes Urethane to make contributions to the Funds for Mr. Hughes's time.

Hughes Urethane tries to avoid this outcome by claiming that the CBA permitted Mr. Hughes to conduct training and by claiming that the Union failed to supply Hughes Urethane with workers. ERISA precludes both defenses. ERISA strengthened the ability of plan trustees to recover delinquent benefit contributions without regard to unrelated employer-union squabbles. *Agathos v. Starlinte Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992). The Third Circuit only recognizes three defenses to an ERISA action: illegality of pension contributions; fraud in execution; and employees

have voted to decertify the union. *See id.* None applies here. Whether the Union failed to provide necessary laborers or whether Mr. Hughes was training employees has no bearing on whether Hughes Urethane was required to make contributions for work that Mr. Hughes performed.

Even if these defenses were viable, Hughes Urethane has not identified any evidence to support them. At most, it relies on a single remark by Mr. Hughes that the Union "cannot give me anybody that knows how to run the truck or do what I do." (ECF No. 28-5 at 300:3-9.) This lone comment gives no indication that Hughes Urethane asked for truck operators and the Union couldn't provide any. It submits no evidence that it followed the CBA's procedure for utilizing temporary workers on a **project-by-project basis.** Likewise, the record lacks any evidence that Mr. Hughes was training employees when he was performing the covered work.

### B.     Motion To Strike

The Court has not relied on any of the documents that Hughes Urethane claims the Union should have produced in resolving the summary judgment motion. So, at least at this stage of the proceedings, Hughes Urethane cannot demonstrate prejudice. Therefore, Rule 37(c) does not require the Court to strike any of the exhibits to the Motion. The Court can determine whether the Union complied with its discovery obligations, and whether any late-produced documents should result in a sanction under Rule 37(c), at a later date in the proceedings. Because Hughes Urethane has made at least a colorable claim of late disclosure, the Court does not view Hughes Urethane's Motion as dilatory, and the Court rejects the Funds' invitation to award sanctions under 28 U.S.C. § 1927.

## IV.     CONCLUSION

Hughes Urethane made a choice: in exchange for getting access to union labor, it agreed to use union labor and to make contributions to the Funds. It cannot avoid that obligation by having a non-union owner/employee perform the work. It owes contributions to the Funds for Mr. Hughes's work, just as it would for any other employee. The Court will grant the Funds' partial summary judgment motion. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

November 3, 2020